IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:11-CV-268-FL

| | |
|---|---|
| S. DOUGLAS TAYLOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA and )<br>HEALTH NET FEDERAL SERVICES, )<br>LLC, )<br>)<br>Defendants. ) | ORDER |

This matter is before the court on defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed April 25, 2012 (DE #s 30, 32), to which plaintiff responded, and defendants replied. Also before the court is the motion of defendant United States of America for exemption from discovery (DE # 37), which plaintiff opposes (DE # 40). The issues raised are now ripe for adjudication. For the following reasons, motion to dismiss on behalf of defendant Health Net Federal Services, LLC ("Health Net") is granted, and as to defendant United States, the motion is denied. This defendant's motion for exemption from discovery, however, is allowed.

## STATEMENT OF THE CASE

Plaintiff filed amended complaint on March 8, 2012, alleging therein claims against: (1) defendant United States, arising under the Administrative Procedure Act, 5 U.S.C. § 500 *et. seq.* ("APA"); and (2) defendant Health Net, arising under TRICARE regulations, 32 C.F.R. § 199 et. seq., the Fifth Amendment of the U.S. Constitution, North Carolina common law defamation, and

North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). Plaintiff is a physician in Onslow County, North Carolina and former authorized provider for TRICARE, a health care program for armed forces members and their dependents. (Am. Compl. 2-3.) Plaintiff seeks reinstatement of his provider status with retroactive effect, money damages (both compensatory and punitive), and costs.

Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant United States asserts failure to state a claim under the APA. (Mem. in Supp. of the United States' Mot. to Dismiss 6-7.)[1] Defendant Health Net Federal Services, LLC ("Health Net") asserts plaintiff's various claims against it are to be dismissed for failure to state a claim upon which relief may be granted and improper pleading. (Mem. in Supp. of Health Net's Mot. to Dismiss 2-3.)

Defendant United States also moves for exemption from discovery, claiming that Federal Rule of Civil Procedure 26(a)(1)(B)(I) exempts defendant from initial disclosures, and that judicial review in this case is limited to the administrative record (DE # 37). Plaintiff opposes that motion, contending that the court has discretion to permit additional discovery outside of the administrative record (DE # 40).

## STATEMENT OF FACTS

The facts, alleged by plaintiff in amended complaint and accepted as true for purposes of this order, are as follows.

Plaintiff is a physician licensed by the North Carolina Medical Board to practice in the state

---

[1] Defendants originally moved to dismiss in February 2012. After plaintiff filed Amended Complaint, court notified parties of an opportunity to clarify. Defendants did so by filing the present motions to dismiss on April 25, 2012.

since 1996, at a full clinical practice level. In 2004, plaintiff applied to become a TRICARE provider through defendant Health Net. TRICARE is a healthcare system for military members and their dependants to obtain medical care that is paid for by the federal government. Defendant Health Net is the Managed Care Support Contractor that implements and administers the TRICARE program for the Department of Defense ("DOD") in North Carolina (as part of the TRICARE North Region).

When plaintiff requested to become a TRICARE provider in 2004, the application asked whether plaintiff had any state medical license issues in the past five years, such as suspensions or revocations. Although plaintiff answered "no," he attached a full explanation of past disciplinary actions with medical boards which had occurred between 1985 and 1995. In 1986 his California license was suspended; in 1987 plaintiff's North Carolina license was revoked; in 1993 his New York license was revoked; and in 1995 he was denied a medical license in Ohio. Plaintiff has had no problems with his medical license in North Carolina since it was reinstated in 1996. Based upon his application which included these disclosures, plaintiff was authorized as a provider in 2004 and his provider status was renewed in 2008.

In 2011, defendant Health Net sent plaintiff a notice that his provider status was being terminated because of the revocation of plaintiff's medical license in New York. Furthermore, the notice stated an intent to sue plaintiff for recovery of funds received from the government while he was an authorized TRICARE provider. Health Net further threatened involuntary collections against plaintiff, despite his repeated attempts to point out that he is a licensed physician and a qualified provider. At the time that plaintiff's New York license was revoked, he was not an authorized TRICARE provider. That revocation was approximately eleven years before plaintiff applied to

3

become a TRICARE provider. Health Net knew of that revocation when it approved his provider status in 2004, and renewed that status in 2008. Thus, plaintiff practiced medicine in North Carolina as an approved TRICARE provider from 2004 to 2011, but had his status retroactively revoked by Health Net. Health Net also communicated to plaintiff's patients that he was not an authorized TRICARE provider and was not entitled to payment for any treatments provided.

Plaintiff has engaged in numerous communications with Health Net, which has refused to reconsider its position. Furthermore, plaintiff's appeal of Health Net's decision to TRICARE Management Activity ("TMA"), an agency within the DOD, provided him with no relief. TMA informed plaintiff that it lacked jurisdiction to conduct a hearing because the issues complained of were issues of law, and not of fact. (Pl.'s Exs. F, G.) Under TRICARE regulations, 32 C.F.R. §§ 199.2(b), 199.10(a)(6) and 199.10(d), only disputes of fact are appealable to TMA. Furthermore, TMA rejected plaintiff's interpretation of the TRICARE regulations. (Pl.'s Ex. F.)

## DISCUSSION

### Motions to Dismiss

A. Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not

4

consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Plaintiff's Federal Regulatory and Fifth Amendment Claims Against Health Net

Plaintiff contends that defendant Health Net misinterpreted the TRICARE regulatory scheme and acted outside of statutory authority to plaintiff's detriment. Furthermore, plaintiff contends that Health Net violated his Fifth Amendment due process rights. In both claims plaintiff fails to state a cognizable claim. The Code of Federal Regulations does not create a private cause of action in itself, and generally must be enforced against a federal agency through the APA or a substantive statute. See Regional Management Corp. v. Legal Services Corp., 186 F.3d 457, 461-62 (4th Cir. 1999) (explaining that substantive statutes or the APA are the typical avenues for relief when plaintiff is harmed by agency conduct). Furthermore, that cause of action would have to be brought against a federal agency, not Health Net. See id. at 462. Therefore plaintiff has no basis in law for his regulatory claim.

Plaintiff cannot bring a Fifth Amendment due process claim against Health Net for similar reasons. The Fifth Amendment generally creates a cause of action for a plaintiff against the government, not a private contractor. However, such a cause of action is feasible if plaintiff can show that: (1) "the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority;" and (2) "the private party charged with the deprivation could be described in all fairness as a state actor." Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991). Here, although plaintiff does contend that Health Net was acting under its

5

contractual relationship with DOD and pursuant to DOD's interpretation of TRICARE regulations when it deprived him of his provider status, plaintiff does not allege that Health Net is a state actor, or fairly described as one. Therefore plaintiff's Fifth Amendment claim must be dismissed as it is against a private party.

C.  Plaintiff's Claims Under North Carolina State Law Against Health Net

   1.  Common Law Defamation

"In order to recover for defamation in North Carolina, a plaintiff must show that the defendant (1) made false, defamatory statements of or concerning the plaintiff, which were (2) published to a third person, (3) causing injury to the plaintiff's reputation." Lanier Const. Co., Inc. v. City of Clinton, N.C., 812 F. Supp. 2d 696, 700 (E.D.N.C. 2011). Defamation can be in the form of libel, any false written publication to a third party, or slander, a false oral communication published to a third party. Cummings v. Lumbee Tribe of North Carolina, 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008). "To establish a claim for defamation *per se*, a plaintiff must prove: (1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." Id. (internal quotes omitted). "For defamation *per se*, malice and damages are presumed as a matter of law." Id. "When the defamatory character of the words does not appear on their face, but only in connection with extrinsic, explanatory facts, they are only actionable as . . . [defamation] *per quod*." Id. "When stating a claim for defamation *per quod*, a plaintiff must plead and prove special damages and malice, in addition to the aforementioned elements of a claim for defamation *per se*." Id.

6

In his complaint, plaintiff claims defendant Health Net committed defamation "by sending over twenty-nine thousand letters to [plaintiff's] current and former patients falsely alleging that plaintiff had been overpaid . . . ." (Am. Compl. ¶ 6.) Plaintiff argues that these letters interfered with his patient relationships and imputed dishonesty.[2] (Id. at ¶ 16.) Incorporated into the complaint is an example of one of these letters sent to plaintiff's patient, Cynthia Saldivar from Health Net. (Pl.'s Ex. A.) The body of the letter reads:

> Between DECEMBER 07, 2009 and DECEMBER 07, 2009, we made payments to the provider referenced on the attached list for services rendered to the patient above. Upon review, it has been determined that an overpayment in the amount of $115.66 was made to this provider.
>
> If the provider contacts you for reimbursement, please contact customer service toll-free at 1-877-TRICARE (1-877-874-2273) or visit our website at www.myTRICARE.com.

(Id.) The attachment to the letter identifies plaintiff as the overpaid provider. (Id.) Plaintiff does not specify what type(s) of libel defendant Health Net allegedly committed in this case.

Here, Health Net's letter does not tend to impute dishonesty on plaintiff where it informs a patient of an overpayment. The letter simply states that there was an overpayment, without suggesting that plaintiff, the provider, was untruthful about anything. However, even if the letter had

---

[2]Plaintiff also makes general allegations that Health Net told former patients plaintiff was not an authorized provider and accused him of fraud. (Am. Compl. ¶ 16.) "In a defamation suit, '[t]he words attributed to defendant [must] be alleged "substantially" *in haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory.'" Sullivan v. County of Pender, N. Carolina, 7:04-CV-26 FL(1), 2006 WL 4664321 (E.D.N.C. June 28, 2006) (quoting Stutts v. Duke Power Co., 47 N.C.App. 76, 83, 266 S.E.2d 861, 866 (1980)). Therefore, these general allegations, which fail to particularly describe the alleged oral statements by Health Net, will not be considered for the purposes of evaluating plaintiff's defamation claim.

7

charged plaintiff with mendacity, North Carolina courts have held that accusations of dishonesty or untruthfulness are not actionable *per se*. Stutts v. Duke Power Co., 47 N.C. App. 76, 82, 266 S.E.2d 861, 865 (1980) (citing Satterfield v. McLellan Stores, 215 N.C. 582, 2 S.E.2d 709 (1939); Ringgold v. Land, 212 N.C. 369, 193 S.E. 267 (1937)). Therefore, plaintiff fails to plead libel *per se*.

Accusations of dishonesty may, however, be actionable *per quad*, if plaintiff can plead and prove some "special damages." Id. This means plaintiff must have suffered pecuniary loss, not merely humiliation, as a result of the defamatory statement. Id. Here, plaintiff has not pled any facts that indicate special damages from Health Net's alleged libel. To the extent that plaintiff has lost revenue from patients, he asserts that it is because his provider status was revoked. (Am. Compl. ¶ 6.) Therefore, because plaintiff has not shown any accusation of dishonesty by defendant Health Net and cannot otherwise meet the burden of proving special damages, his defamation claim is dismissed pursuant to Rule 12(b)(6).

2. Unfair and Deceptive Trade Practices Act Claim

Lastly, plaintiff has alleged a claim for unfair and deceptive trade practices ("UDTPA") pursuant to North Carolina General Statute § 75-1.1. In response, defendant Health Net contends that plaintiff has alleged no specific unfair act or deceptive practice to support such a claim. "To state a claim for unfair or deceptive trade practices . . . under N.C. Gen. Stat. § 75-1.1, a plaintiff must allege three elements: '(1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant.'" Exclaim Marketing, LLC v. DIRECTV, Inc., No. 5:11-CV-00684, 2012 WL 3023429, at *8 (E.D.N.C. July 24, 2012) (quoting Nucor Corp. v. Prudential Equity Group, LLC, 189 N.C. App. 731, 738, 659 S.E.2d 483, 488 (2008)).

North Carolina courts have recognized that "libel *per se* of a type impeaching a party in its

8

business activities is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75-1.1, which will justify an award of damages . . . for injuries proximately caused." Ellis v. Northern Star Co., 326 N.C. 219, 226, 388 S.E.2d 127, 131 (1990). No other basis for a UDTPA claim is stated in plaintiff's complaint. Accordingly, where plaintiff has failed to state a claim of defamation *per se*, see discussion supra Part D.1, plaintiff has failed to meet the first element of a UDTPA claim, identifying "an unfair or deceptive act or practice," and his claim must be dismissed. See Exclaim Marketing, 2012 WL 3023429, at *8. Plaintiff has failed to state any cognizable claim against defendant Health Net. Therefore, Health Net's motion to dismiss is granted.

D.  Plaintiff's APA Claim against defendant United States

Plaintiff's claim for relief against defendant United States arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq. Pursuant to the APA, a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." § 551(13).

"The reviewing court shall . . . hold unlawful and set aside any agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

> [A] reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335 (4th Cir. 1995) (internal quotation marks and

9

omitted).

In this case, plaintiff has alleged a harm caused by agency action. He asserts that the DOD and TMA adversely affected him by failing to abide by TRICARE regulations when affirming Health Net's revocation of his provider certification. (Am. Compl. ¶ 5.) Plaintiff asserts an interpretation of the CFR that would allow his status as a TRICARE provider, and disallow Health Net's retroactive removal of his status. (Mem. in Opp'n 3-5.) Furthermore, plaintiff asserts that all administrative remedies have been exhausted through TMA, which stated it lacked jurisdiction to consider his interpretation of the applicable regulations. (Am. Compl. ¶ 18.) Defendant United States does not dispute that this constitutes final agency action within the meaning of the APA. (Mem. in Supp. 7.)

Defendant United States argues that plaintiff has not pled any agency action that is not in accordance with law because TMA dismissed his appeal for having no "appealable issue" under TRICARE regulations. (Mem. in Supp. 7-8.) Plaintiff has asserted that Health Net's termination of his provider status was not in accordance with law because it violated TRICARE regulations. According to plaintiff, when TMA upheld plaintiff's termination, it reiterated Health Net's interpretation of the regulations. (Pl.'s Exs. F, G.)

Plaintiff's complaint suggests his provider status revocation was handled unreasonably by TMA in two ways. First, the revocation was retroactively effective to the date of initial issuance, essentially voiding plaintiff's entire TRICARE provider practice. (See Am. Compl. ¶ 12.) "Retroactivity is not favored in the law." Bowen v. Georgetown University Hosp., 488 U.S. 204, 208 (1988). Agency actions that are retroactive in effect are treated suspiciously because agencies only have limited power as conferred by Congress. See id. at 208-209; see also Boggs v. C.I.R., 784

F.2d 1166, 1171 (4th Cir. 1986) (holding that the Commissioner of Internal Revenue did not have the power to retroactively revoke a trust's qualified status under the treasury regulations); Brownell v. National City Bank of New York, 131 F.Supp. 60, 63 (S.D.N.Y. 1955) (noting that Congress does not grant most agencies "wide power to retroactively revoke [a license] if fraud was not practiced in obtaining the original license or if there was no failure to comply with the license provisions").

In this case, plaintiff contends that TMA mis-interpreted the TRICARE regulations, and that they do not grant any authority to retroactively revoke his TRICARE provider status. (See Am. Compl. ¶¶ 14-15, Ex. F.) The termination of TRICARE provider status is governed by 32 C.F.R. § 199 (g), which provides in part that: "[a] provider who has licenses to practice in two or more jurisdictions and has one or more license(s) suspended or revoked will . . . be terminated as a [TRICARE] provider." Plaintiff has not had any suspensions or revocations since becoming a "provider." Therefore, plaintiff argues his provider status was improperly terminated under the TRICARE regulations. Defendant United States fails to indicate any particular law or regulation that grants TMA the authority to retroactively terminate provider status. Therefore, based on plaintiff's allegations in the complaint, the retroactive nature of provider status termination may be arbitrary and capricious action on the part of the agency, and not a reasonable interpretation of the law.

Secondly, plaintiff's complaint suggests some reliance on equitable estoppel where he was granted TRICARE provider status under full disclosure of his licensing history, and relied on that status to set up a practice and bill TRICARE patients. (See Am. Compl. ¶¶ 7,9-12; Mem. in Opp'n 4-5.) "Equitable estoppel is a well established concept invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another." U. S. for Use & Benefit of Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York, 402 F.2d 893, 897 (4th Cir. 1968); see also

11

United States v. Cox, 964 F.2d 1431, 1434 (4th Cir. 1992) ("An equitable estoppel may arise when there is voluntary conduct by the party to be estopped that induces detrimental reliance on the part of the party asserting the estoppel."). Here, plaintiff was granted provider status with full disclosure that his NY medical license had been revoked and never reinstated. In reliance on his provider status, plaintiff set up a practice in Greenville, NC, which has a large TRICARE patient population. Plaintiff faithfully provided care and billed his patients based on his status as a TRICARE provider for about seven years. His reliance was to plaintiff's detriment because he established a practice niche in TRICARE, that has now been disrupted by TMA. Furthermore, plaintiff suffers actual monetary losses to the extent that TMA seeks to retroactively charge him for payments received over the years from TRICARE patients. Based on these allegations in the complaint, the court is unable to conclude that the defendant United States' interpretation of the regulations was not reasonable or arbitrary and capricious. Plaintiff has alleged a plausible claim under Twombly. 550 U.S. at 570. Therefore, defendant United States' motion to dismiss is denied.

## Motion for Exemption from Discovery

Defendant United States moves for exemption from initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(B)(I) and from all discovery obligations, as plaintiff's claim is brought pursuant to the APA. For the reasons below, defendant United States' motion is granted.

A.   Initial Disclosures

Rule 26(a)(1)(B)(I) exempts "an action for review on an administrative record" from initial disclosures. Here, plaintiff's sole claim against the United States is under the APA to review agency action plaintiff contends is contrary to law. (Am. Compl. ¶ 5.) This is an action for review on an administrative record. See Fed. R. Civ. Pro. 26(a)(1)(B)(I). Furthermore, plaintiff does not contest

12

that defendant United States is exempt from initial disclosures. Therefore, such an exemption is granted pursuant to Rule 26.

B.      Discovery Obligations

In reviewing agency action, "the court shall review the whole record." 5 U.S.C. § 706. "Judicial review of administrative action is generally confined to the administrative record," Fort Sumter, 66 F.3d at 1335. Further, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Fayetteville Area Chamber of Commerce v. Volpe, 515 F.2d 1021, 1024 (4th Cir. 1975) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)). "The court assumes the agency properly designated the [a]dministrative [r]ecord absent clear evidence to the contrary." Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993).

"Judicial review of agency action should be based on an agency's stated justifications, not the predecisional process that led up to the final, articulated decision." Ad Hoc Metals Coal. v. Whitman, 227 F. Supp. 2d 134, 143 (D.D.C. 2002). "[A]n agency generally may exclude material that reflects internal deliberations." Fund for Animals v. Williams, 391 F. Supp. 2d 191, 197 (D.D.C. 2005). "Requiring the inclusion of deliberative materials in the administrative record would pressure agencies to conduct internal discussions with judicial review in mind, rendering 'agency proceedings . . . useless both to the agency and to the courts.'" Tafas v. Dudas, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) (quoting San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n, 789 F.2d 26, 44-45 (D.C. Cir. 1986)). See also Nat'l Audobon Soc'y v. Dep't of Navy, 422 F.3d 174, 199 (4th Cir. 2004) ("the evidence we look to . . . does not include . . the alleged subjective intent of agency personnel divined through selective quotations from email trails.").

In this case, plaintiff's claim against defendant United States is based upon agency action, and discovery will be appropriately limited to review of the administrative record. Plaintiff asserts in his opposition that he would like to depose William N. Voharas, who is an attorney for TMA. Plaintiff would like to know how Voharas reached the conclusion that revocation of provider status was appropriate his case. Plaintiff, however, is not entitled to discovery of the agency's internal deliberations or other evidence outside of the record. See Fund for Animals, 391 F. Supp. 2d at 197. Defendant United States correctly asserts that its discovery disclosures are limited to the administrative record. Therefore, defendant United States' motion for exemption from discovery is granted.

## CONCLUSION

For the foregoing reasons, defendant United States' motion to dismiss pursuant to Rule 12(b)(6) is DENIED, and defendant Health Net's motion to dismiss is GRANTED. Defendant United States' motion for exemption from discovery is GRANTED. Plaintiff and Defendant United States now shall confer and tender to the court a proposed consent order within fourteen (14) days from date of entry of this order, setting forth agreed upon deadlines for provision of the administrative record and filing of dispositive motions.

SO ORDERED, this the 26th day of November, 2012.

LOUISE W. FLANAGAN
United States District Judge